A. G. Brooke v. B. G. Dulaney et al.

No. 1587.  Decided June 7, 1906.

**1.—District Clerk—County—Population—Primary Election—Mandamus.**

Under article 5, section 20, of the Constitution, and article 1096, Revised Statutes, Panola County, which had over 20,000 population by the last federal census, but cast only 1,575 votes in the last election for Governor, was entitled to elect both a district clerk and a county clerk, and candidates for the former office could maintain mandamus against the election officers to require their names to be placed on the official ballot for the primary election.  (Pp. 88–91.)

**2.—Same.**

The Constitution (art. 5, sec. 20) having provided that one officer fill the position of county clerk and district clerk only in counties of less than 8,000 inhabitants, without mentioning how the population should be determined, it is implied that it should be fixed by some official enumeration; and it is to be presumed that the enumeration contemplated was that of the United States census, which was made the test in determining whether the county should elect a collector of taxes (Const., art. 8, sec. 16) and in apportioning representatives (Const., art. 3, sec. 26.)  (P. 90.)

**3.—Same—Legislative Power.**

The right of a county of more than 8,000 inhabitants (presumably as shown by the United States census) to elect a district clerk, being fixed by the Constitution, could not be taken away by the Legislature.  It is also the opinion of Chief Justice Gaines that the test prescribed by article 1096, Revised Statutes, for determining the population (five times the number of votes cast for Governor in the last preceding election), is too arbitrary and inadequate, under the circumstances surrounding elections in this state, to be held a proper exercise of the power to determine the population, to whom this right was given by the Constitution, if it should be held to be within the power of the Legislature to prescribe the method of such determination.  (Pp. 91, 92.)

Question certified from Court of Civil Appeals for the First District, in an appeal from Gregg County.

*Brooke & Woolworth* and *J. C. Brooke,* for appellant (respondent).

*R. V. Davidson, Attorney-General* and *Claud Pollard,* Assistant, also for appellant.

*H. H. Nelson,* for appellees (relators).

GAINES, Chief Justice.—This is a certified question from the Court of Civil Appeals for the First Supreme Judicial District.

The suit was filed by the appellees who were candidates for the nomination of the Democratic Party for the office of district clerk of Panola County, against the appellant as chairman of the Democratic Executive Committe of the county, to compel him as such chairman to enroll their names as such candidates upon the list of those to be voted for at the primary election of the Democratic party to be held on the 28th of July, 1906.  Under the law, the names of the candidates for such election must be enrolled on or before the 12th day of this month. In order that the decision of this court may be available to the parties, it is necessary that a prompt answer to the question should be given,

to the end that the Court of Civil Appeals may make an opportune determination of the case. We must therefore at this time forbear a discussion of the point presented and content ourselves with a mere answer to the question. An opinion will hereafter be written.

We answer that the trial court did not err in holding that Panola County was entitled to both a district clerk and a county clerk.

OPINION FILED JUNE 13, 1906.

The question certified in this case was answered at a previous day of this term, but for reasons then given we did not state the grounds for our opinion. We now set out the certificate.

"This is a suit by the appellees against the appellant to require him, as chairman of the Democratic Executive Committee of Panola County, to accept appellees' written request to have their names placed upon the official ballot of the Democratic primary election to be held in said county on July 28, 1906, as Democratic candidates for the office of district clerk of Panola County. Appellees, who were the relators in the court below, by proper allegations set up the fact that appellant is chairman of said executive committee and that they are candidates for said position and are duly qualified and their application is in due form of law, and that they agreed to perform all conditions required of them as candidates for said office. The appellant who was respondent in the court below answered by general demurrer, special exception and general answer. Respondent's special exception and general demurrer were overruled by the court. Respondent specially answered admitting that he is the county chairman; that as such he refused and still refuses to receive and file the said written request of applicants to place the name of relators on the ticket of the said primary election for the following reasons: First, that article 1096, Sayles' Civil Statutes, provides that in counties having a population of less than 8.000 persons that there shall be an election for a single clerk, who shall perform the duties of district and county clerk and in determining the number of persons under this article the ascertainment shall be made on the basis of five inhabitants for every vote cast for Governor in such county in the last preceding general election, and that as shown by the certificate of S. S. Baker, clerk of the County Court of Panola County, Texas, said vote at the last preceding election in Panola County was 1,575 votes and therefore the office of district clerk is discontinued and the office of county and district clerk must be filled by a single clerk, and the candidates must be nominated for county and district clerk and not simply district clerk.

"Second. Respondent answered further and said that article 1096, Sayles' Revised Statutes, is the mode prescribed by the statutes of ascertaining the population of any and all counties in this state with reference to the election of district clerk, and that said article is mandatory so far as respondent is concerned and that if it be only directory that relators can not by writ of mandamus compel respondent to do an act in violation of a directory statute, which relators are seeking to do; and respondent further answered and said that the grant of peremptory

mandamus in this case will be to compel him to perform an act when there is no statute clearly defining and enjoining upon respondent a duty so to do, and leaving respondent no judicial function, discretion or alternative.

"The case was tried before the court and the judge thereof, the Hon. R. B. Levy, granted and awarded to relators a peremptory writ of mandamus as prayed for. The cause is pending before us on the appeal of respondent.

"The agreed facts are briefly as follows: The office of district clerk in Panola County has been separately maintained continuously for the past thirty years, is now in existence and is held by a duly qualified officer. The office of county clerk has during all that time and is now separately maintained. The county has during all that time had a population exceeding 8,000.

"In 1904, the last preceding election for Governor, it had a population exceeding 20,000. About 3,000 voters had qualified by paying poll tax and about 2,000 voted that year in the Democratic primary. The preceding United States census gave the county a population exceeding 20,000. Under the law the county constitutes a distinct legislative district. The vote for Governor in 1904, the last preceding election, amounted to only 1,575 votes.

"B. G. Dulaney, William Walton and T. A. Cromwell are members of the organized Democratic party in Panola County and either is qualified to hold the office of district clerk of that county if elected. They are rival candidates for the position and each has applied in due form of law to have his name placed on the official ballot as a candidate for the Democratic nomination for the office of district clerk at the primary election to be held in Panola County on the 28th of July, 1906. The applications are in writing duly acknowledged and were addressed and delivered to A. G. Brooke, the chairman of the Democratic Executive Committee for that county. He refused the applications on the ground that the office of district clerk for that county had lapsed under article 1096 of the Revised Civil Statutes and become merged in the office of county clerk.

"The trial court having adjudged that the writ should issue as prayed for the following question arises which we respectfully certify for your decision.

"QUESTION.

"Did the trial court err in his judgment?"

We understand the question to elicit the inquiry, whether Panola County is entitled under our Constitution and laws to have elected at the coming election in November of this year both a district clerk and a county clerk.

Section 20 of article 5 of the Constitution is as follows: "There shall be elected for each county, by the qualified voters, a county clerk, who shall hold his office for two years, who shall be clerk of the County and Commissioners' Court and recorder of the county, whose duties, perquisites and fees of office shall be prescribed by the Legislature, and a vacancy in whose office shall be filled by the Commissioners'

Court, until the next general election for county and state officers; provided, that in counties having a population of less than 8,000 persons there may be an election of a single clerk, who shall perform the duties of district and county clerk."

In reference to this matter the Legislature in 1879 made the following provision: "In counties having a population of less than 8,000 persons, there shall be an election of a single clerk, who shall perform the duties of district and county clerks. He shall take the oath and give bond required of clerks of both the District and County Courts, and shall have all the powers and perform the duties of such clerks respectively. In determining the number of persons in the county under this article, the estimate shall be made on the basis of five inhabitants for every vote cast for Governor in such county at the last preceding general election." (Art. 1096, Rev. Stats.)

In connection with the section of the Constitution just quoted should be read the following provisions:

"The sheriff of each county, in addition to his other duties, shall be the collector of taxes thereof. But in counties having 10,000 inhabitants, to be determined by the last preceding census of the United States, a collector of taxes shall be elected, to hold office for two years and until his successor shall be elected and qualified." (Sec. 16., art 8.)

"The members of the House of Representatives shall be apportioned among the several counties, according to the number of population in each, as nearly as may be, on a ratio obtained by dividing the population of the State, as ascertained by the most recent United States census, by the number of members of which the house is composed, provided, that whenever a single county has sufficient population to be entitled to a representative, such county shall be formed into a separate representative district," etc. (Sec. 26, art. 3.)

For a full understanding of the section last quoted, reference should be made to section 2 of the same article which provides, among other things, that at any apportionment made after the adoption of the Constitution, "the number of representatives may be increased by the Legislature upon a ratio of not more than one representative for every 15,000 inhabitants."

To state briefly the provisions and in the order in which they appear in the Constitution; in the first place, it is provided that each county in case of a legislative apportionment have at least one representative in the Legislature, provided it have 15,000 inhabitants as shown by the most recent United States census; in the second, the provision is, in substance, that if a county have 8,000 population or more, there shall be both a district clerk and a county clerk; and in the third, it is declared, that in counties having 10,000 inhabitants, to be determined by the last census of the United States, there shall be elected a tax collector.

We fail to see any good reason why the framers of the Constitution should provide a means by which the enumeration of the inhabitants of a county in determining the number of its representatives and in determining whether it should have an independent tax collector and why it should fail to make some like provision for determining the same

question in order to fix the right of a county to have two clerks. Yet in order to maintain the position of the appellant, it must be held that they did so fail and left the matter to be regulated by the Legislature. In re Sewer Assessment of Passaic (54 N. J. Law, 156) the question of the classification of the city of Passaic came up for determination. The cities in that State seemed to be divided under the law into three classes according to population; and the statute, as does our Constitution in reference to the number of clerks in the county of this State, merely gave the number of the requisite population without expressly providing any method by which the number should be determined. In deciding the point the court say: "If the question thus presented was limited to the construction of the original Classification Act, I think its solution not difficult. Neither parties litigant, nor municipalities, nor courts have been empowered to make enumeration of inhabitants for the determination of population. Any attempted enumeration, not accompained with power to inquire and to compel answers, would be a mere farce. The fact determined in one case in one way might be determined otherwise in another. case. It is inconceivable that the Legislature intended to make classification depend on such uncertainties. It is apparent that 'population' in this Act bears the meaning of enumeration of inhabitants, and refers to such enumeration as the law provides to be made. Two such enumerations are provided for by law in each decade—one under United States authority and the other under the laws of this state." If that decision be correct, then the apparent difference between section 20 of article 5 and the other two sections of the Constitution quoted above disappears; for if by naming the number of the population of a county by which a political power is to be conferred, it is implied, that the number is to be fixed by· some official enumeration, it prescribes the same method of determining the number as that expressly provided in the other sections. So also if the Constitution fixes the method the Legislature is without power to provide another.

But even if the decision of the point by the Supreme Court of New Jersey should not be followed, we think there is good reason for holding that the intention to be derived from the Constitution was that the United States census should govern. We have already said we fail to discover any sufficient reason why a different rule should be made with respect to the offices of district and county clerks, and that between sheriff and tax collectors, or that which applies to representatives in the Legislature. If it be said that the purpose was to leave the matter to be regulated by the Legislature, the answer must be, that it is reasonable to presume, that since the framers of the Constitution had fixed the rule in the other two cases, if they desired that the methods of determining the enumeration in the case of the district and county clerks should be confided to the Legislature, they would have expressly declared that intention. Was it the purpose so to act, as to deny to Panola County two clerks for the reason, that under the legislative rule it is found to have less than 8,000 inhabitants—while under the constitutional rule (that by the United· States census) it is found to have not only 10,000 and therefore entitled to a separate tax collector, but

also 15,000 and therefore entitled to at least one representative? We can not believe that it was intended to permit the Legislature to bring about so incongruous a result. For these reasons at the last sitting of the court our answer was given in the negative.

But should it be conceded, that it was intended to leave with the Legislature the power of prescribing a method of ascertaining the number of the population of the respective counties, still it is our opinion that the rule laid down for that purpose in article 1086 of the Revised Statutes should not be permitted to stand. Sections 9 and 20 of article 5 of the Constitution in effect prescribes absolutely that every county having 8,000 population or more shall have two clerks; and even if the Legislature have the authority to regulate the mode of ascertaining the number of the inhabitants, it is not an arbitrary power; but it is one that must be exercised in such a manner as not to deprive the counties of a right guaranteed by the Constitution. Ordinarily the reasonableness of a law is a matter for the Legislature and their determination is binding upon the courts. But when the Constitution declares that every county having a population of 8,000 shall have two clerks, the Legislature can not, either directly or indirectly, take away the right so conferred. They can not under the guise of fixing a mode of ascertaining the number of the population impair the mandate of the fundamental law. It follows therefore that if the Legislature has the right to fix the method that method must be such as is calculated to ascertain with some reasonable degree of approximation the true population of the county, otherwise the Constitution is infringed and the counties deprived of a right granted by it. In illustration of this principle Judge Cooley makes use of the constitutional provisions exempting homesteads from forced sale and adds: "The provision of a Constitution which defines a homestead and exempts it from forced sale is self-executing, at least to this extent, that, though it may admit of supplementary legislation in particulars where in itself it is not as complete as may be desirable, it will override and nullify whatever legislation, either prior or subsequent, would defeat or limit the homestead which is thus defined and secured." (Cooley's Const'l Lim., 101.)

No better illustration of the principle thus announced can be furnished than the result of the attempted legislation as shown in the present case. Here a county not only shown by the United States census to have, but admitted to have in fact over 20,000 inhabitants, is reduced to the condition of a county of less than 8,000 by the method of ascertaining the population prescribed by the Legislature. Can it be said that a provision which brings about such a result is a reasonable or fair test of the population of a county? Clearly not. There is no law to compel suffragants to vote. It is a matter of common knowledge that all do not vote. Let us refer to the condition commonly known to exist in this state. With us the predominant party has such an overwhelming majority, that a nomination by it for Governor is considered and acted upon by both parties as equivalent to an election. The result follows, that a large proportion of the voters of both parties do not resort to the polls at the general election—those of the majority

because they deem it unnecessary, and the voters of the other party because they have no hope of electing their candidate. It is true, that circumstances may occur which may cause a larger vote, though it may be doubted whether we have had an election for Governor since the adoption of the Constitution in which the entire vote could be deemed to afford a fair basis for the estimate of the population of the State or of its respective counties. In my judgment, the Legislature was without power, even if it had power to regulate the matter, to adopt such a varying and uncertain and hence such an arbitrary test. Upon these last propositions, the remarks made are given as my individual opinion —first because the first proposition, upon which we all agreed, decided the question, and, in the second place, because upon the latter we are not all agreed.