HARRIS COUNTY v. SMITH.   (No. 7172.)*

(Court of Civil Appeals of Texas.   Galveston. May 23, 1916.   Rehearing Denied June 8, 1916.)

1. SHERIFFS AND CONSTABLES ⟨Key⟩28—COMPENSATION—"NEXT PRECEDING CITY ELECTION"—STATUTORY PROVISIONS.

In Acts 25th Leg. Sp. Sess. c. 15 (10 Gammel's Laws, pp. 1482-1484), amending 10 Gammel's Laws, pp. 1445-1453, § 10, limiting fees to be retained as compensation by constables to $1,200 per annum in cities of more than 15,000 inhabitants, "to be determined by the next preceding city election on the basis of five inhabitants for each vote cast," the words "next preceding city election" do not mean the election next preceding the passage of the law, but the election next preceding the date upon which the constable assumed the duties of his office; the purpose of the Legislature being to provide a flexible test from election to election following the changes in population of cities.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 45, 49, 51, 54-56, 58; Dec. Dig. ⟨Key⟩28.

For other definitions, see Words and Phrases, Second Series, Next Preceding.]

2. SHERIFFS AND CONSTABLES ⟨Key⟩28—COMPENSATION—"NEXT PRECEDING CITY ELECTION"—STATUTORY PROVISIONS.

Such words refer to regular or general elections for the election of city officers, held at fixed intervals, and not to special elections.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 45, 49, 51, 54-56, 58; Dec. Dig. ⟨Key⟩28.]

3. SHERIFFS AND CONSTABLES ⟨Key⟩28 — COMPENSATION—STATUTORY PROVISIONS.

The power of the Legislature to fix fees or compensation of constables, or methods of ascertaining fees, is not limited by the Constitution.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 45, 49, 51, 54-56, 58; Dec. Dig. ⟨Key⟩28.]

4. STATUTES ⟨Key⟩188.— CONSTRUCTION — LANGUAGE USED.

The intention of the Legislature as to a law is to be determined primarily from the plain and ordinary import of the language used.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. ⟨Key⟩188.]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by the County of Harris against F. S. Smith. From a judgment for defendant, plaintiff appeals. Affirmed.

Sewall Myer and John H. Freeman, both of Houston, for appellant. John H. Crooker, E. T. Branch, and Gill, Jones & Tyler, all of Houston, for appellee.

McMEANS, J.   The county of Harris brought this suit against F. S. Smith and the sureties on his official bond to recover alleged excess fees collected and retained by Smith from November 8, 1908, to November 30, 1910, during which period he was constable of precinct No. 1 of Harris county.

The petition alleged that during the period mentioned there were two justices of the peace in precinct No. 1, Harris county, and that from 1907 through 1911, which included the time when said Smith was constable, the city of Houston, in Harris county, had a population in excess of 15,000; that at the election in 1896, which was the next preceding city election before the passage of chapter 15, General Laws, Special Session of the Twenty-Fifth Legislature 1897, there were cast more than 3,000 votes, but that at no time since the passage of the act had there been cast in any city election held in said city as many as 3,000 votes; that nevertheless during all said time the city of Houston actually contained more than 15,000 inhabitants, which fact was shown by the United States census of 1890, 1900, and 1910; that during his tenure of office the said Smith had collected $7,013.48 as fees, and had failed and refused to account to the county for the same or any portion thereof.

A general demurrer urged by the defendant to the plaintiff's petition was sustained, and, the plaintiff declining to amend, its suit was dismissed by the court, and from the judgment of the court sustaining the demurrer and dismissing its suit, the plaintiff has appealed.

Appellant's only assignment of error is based upon the action of the court in sustaining the general demurrer to its petition. The real question presented is whether the facts alleged brought the constable's office within the operation of the fee law. The law in question was passed at the Special Session of the Twenty-Fifth Legislature in 1897, being

chapter 15 of the Acts of that Legislature, and may be found in volume 10 of Gammel's Laws of Texas, pp. 1482 to 1484, and in the Session Acts on pages 42 to 44, which act is amendatory of section 10 of an act passed by the same Legislature found in volume 10, Gammel's Laws of Texas, pp. 1445 to 1453.

Section 10 of the act as amended provides the maximum amount of fees that certain county officers may retain as compensation for their services, and further provides:

"Justices of the peace, an amount not exceeding $1,500 per annum; constables, an amount not exceeding $1,200 per annum: * * * Provided, that this act shall not apply to justices of the peace and constables, except those holding offices in cities of more than 15,000 inhabitants, to be determined by the next preceding city election on the basis of five inhabitants for each vote cast at such election."

It is alleged in the petition that the city of Houston during the period in which appellee held the office of constable actually contained more than 15,000 inhabitants, and that this fact was shown by the United States census for 1890, 1900, and 1910. The effect of the demurrer was to admit the truth of these allegations. The contest therefore arises on whether the test prescribed by the Legislature by which the population of the city of Houston is to be determined shall stand as the only means of ascertaining the number of inhabitants of said city in fixing the compensation or fees of justice of the peace and constable, or whether resort may be had to other means to establish the number of its inhabitants for such purpose.

[1] The first proposition advanced by appellant is that, where the petition disclosed on its face that at the city election in 1896 more than 3,000 votes were cast, and that such election was the election next preceding the passage of the law in question, a constable holding office in a precinct containing such city thereby became subject to the terms of such law, and his fees of office are governed thereby.

We cannot agree to this contention. Clearly, we think, the words "next preceding city election" do not mean the election next preceding the passage of the law, but the election next preceding the date upon which the constable assumed the duties and functions of his office; in other words, the election next preceding the occasion which gives rise to its application. State v. District Court, 84 Minn. 377, 87 N. W. 942. We think the purpose of the Legislature was to adopt a flexible test which would, from election to election, disclose approximately the population of the city as it might be affected by the growth and vicissitudes of cities in this state, and that this purpose is sufficiently reflected from the language employed.

[2] The second contention is that the proviso in the act in question is indefinite and uncertain, and therefore void and inoperative, in that it does not provide what character of city election is meant, that is, whether an election to vote on bonds, or to vote on referendum and recall, or charter amendments, or for election of mayor and commissioners, or for special election, regular election, or general election, and, further, because it does not state what event or thing the election referred to shall precede.

We think the language of the proviso admits only of the construction that the election referred to was the regular or general elections in the city for the election of city officers which are required to be held at fixed intervals, and not such other elections which, although the city might have the authority to order and hold them, might never be held, because the contingency upon which the holding of them depends might never arise. We think, as before stated, that the event or thing the election referred to shall next precede is the assumption of the officer of the duties of his office after he shall have been clothed with the authority to perform them.

The next contention is that the proviso in question is inoperative and void because the rule prescribed therein for determining population is unreasonable, arbitrary, fictitious, and faulty, and defeats the purpose of the act and the intent of the Legislature in passing the act.

The language of appellee's counsel in combating this contention is so apt, and so well meets the views of this court, that we adopt the same as our reasons for ruling adversely upon this contention of appellant:

"In the first place, the body of the fee bill did not apply and was not intended to apply to justices of the peace and constables. Those justices of the peace and constables who came within the provisions of the body of the bill under the language used by the Legislature were only those who held an office in a city of more than 15,000 inhabitants, as determined by the next preceding city election on a basis of five inhabitants for each vote. Now, there can be no question that the Legislature had the power to either include or exclude justices of the peace or constables, taking into consideration the varying and changing populations of cities in this new and growing country. They had the right to adopt such a test of population as would change with the changing population of cities, and to refuse to adopt a test which was applied only every ten years, as is the federal census, and which, as a matter of common knowledge, was not only the source of much difference of opinion and discontent, but the result was not usually officially announced until a long time after the count was made. The Legislature knew what was then and is now a matter of common knowledge, that on account of the dominance of the Democratic party in Texas the real voting strength appeared in the primaries, and not in the general election for state officers, but they also knew what was a matter of common knowledge at that time, that in city affairs it was not usual for the vote to be divided along party lines. * * * It followed that in city elections the vote was more nearly a full vote than in state elections, and so as to state and county officers they prescribed a different test, to wit: In this case the national census and a vote at a fixed time, and after that fixed time as to counties containing cities having a population of 25,000 or more, the general blanket provision that the federal census should control was applicable, but it affected only

county and state officers, inasmuch as it applied to a situation not in which the officer held his office in the confines of the city, but in which a county or state officer held office in a county having a city of 25,000 population or more. So it appears clearly that the Legislature purposely and deliberately chose its words and made its meaning very plain. It intentionally chose that as to the population of cities in which constables and justices of the peace resided and held office that there should be a test which should vary from time to time, but that in those cases in which the population of entire counties was involved the federal census, which is taken every ten years, should be the basis of calculation. That such was the legislative intent is further emphasized by the manner in which section 10 is separated into articles in the Revised Statutes of 1911 (article 3881 et seq.). The Legislature could not have made its meaning more clear, or its purpose more plain, if it had foreseen this lawsuit and this contention, and the brief of appellant concedes to the Legislature the power to choose this or any other test. Appellant seeks to present the question that the Legislature acted improvidently and without due consideration, and that the provision in this case defeats the general purpose of the law. It may in this case defeat the general purpose of the law as applied to the last city election. So also if they had adopted the state election, or an election conducted by the Democratic party, for the reason that it might so happen that the contest was of such small importance or involved so little feeling that a full vote would not be brought out. It will be borne in mind that the only census of population official in its nature that is taken is the federal census. States and cities take no such census. They do keep an official list of votes at elections prescribed by law. They do take a scholastic census of the school population of cities and counties, but the actual enumeration of inhabitants, as stated above, is taken only by the federal authorities, and that once every ten years, and the only other basis that we know of would be the private census taken by those who make city directories, and even in that case it is not an actual count of population, but furnished a mere basis for calculation, as the vote was intended to do in the law under consideration."

[3] The authorities cited by the appellant in this connection do not sustain its contention. In Brooke v. Dulaney, 100 Tex. 86, 93 S. W. 997, the law there under construction presented the question as to whether the statute did not impair the mandate of the Constitution. The Legislature undertook to say that in counties having more than a certain population the district clerk should perform the duties of the county clerk, and there should be no county clerk. The Legislature adopted as the test of population 5 inhabitants for every vote cast for Governor at the last preceding general election. It turned out under this test that Panola county appeared to have less than 8,000 population, when, as a matter of fact, and by the federal census, it had a much larger population. The Supreme Court, after holding that the Constitution, as to the population of counties, prescribed a federal census as a test, further held merely that the constitutional right depended on the actual population of the county; that the case showed that the actual population was much larger than the population as disclosed by the test prescribed by the Legislature; and that the Legislature had no power to deprive

the county of a constitutional right by adopting a test which failed to disclose at least approximately the true population of the county. In the present case the rights and limitations created by the law and the test of population are strictly within the power of the Legislature, because the power of the Legislature to fix fees or compensation of constables is not limited by the Constitution; hence the inquiry is as to what the Legislature intended to say or do. The proviso appears in both the original act and in the amendment in the same language as quoted above, and we think that it is thus made clear that the language was intentionally employed by the Legislature. To put upon the language used a construction different from that warranted by its plain terms would be to construct and not to construe the law; and this the courts are not at liberty to do. Blythe v. Ayers, 96 Cal. 532, 31 Pac. 924, 19 L. R. A. 40.

The fourth contention is that the intent and purpose of the lawmakers in passing the act in question being to limit fees of office, and fees of constables holding office in counties containing cities having in fact more than 15,000 inhabitants, the courts will construe the act so as to effectuate such purpose and intent.

[4] It is true that one of the fundamental canons of statutory construction is that:

"The courts will enforce the intent of the statute rather than to follow the strict letter of the act." Forshey v. Railway, 16 Tex. 528; Weber v. Rogan, 94 Tex. 68, 54 S. W. 1016, 55 S. W. 559, 57 S. W. 940.

The effect of the general demurrer was to admit as true the allegation that at the time in question the city of Houston had more than 15,000 inhabitants. It was clearly the purpose of the Legislature to limit the fees of constables in cities of 15,000 inhabitants only when such population should be ascertained in a certain manner. But by whom, or by what manner was the question of population to be determined? The Legislature might have provided that the last preceding federal census should control, or that the question might be determined in some way other than by a vote at a city election. There existed no constitutional restrictions upon its power in this regard, and, if in its wisdom it believed, and so enacted, that the test prescribed should be upon the basis of 5 inhabitants for each vote cast, why should the courts say that this plainly declared intention should be made to yield to the equally clear intention to apply the law in counties having a city of a certain population? We think the intent of the Legislature that the law should apply in cities having more than a designated population is not more clearly expressed than is the intent that such population should be determined in a particular manner. The intention of the Legislature is to be determined primarily from the plain and ordinary import of the language used; and, if the lan-

guage is plain and unambiguous, there is no room for construction. Fire Association v. Love, 101 Tex. 380, 108 S. W. 158, 810. Certainly the language of the proviso providing the method by which the population is to be determined is free from ambiguity. The adoption of the method of ascertainment was a matter of policy clearly within the constitutional power of the Legislature, with which the courts are not concerned. Clark v. Finley, 93 Tex. 179, 54 S. W. 343.

The fifth contention is that the courts, in construing statutes, should try out the right intendment of the law, and, in order to do this, they should ascertain the mischief the law was intended to remedy, and, after ascertaining this, to observe and follow the intent of the law, although it may conflict with the language actually used. This is a practical repetition of the fourth proposition, and what we have said in disposing of it sufficiently disposes of the fifth proposition.

The sixth and seventh propositions, even if abstractly correct, furnish no reason for giving the proviso a construction contrary to that we have above given it.

The eighth proposition is without merit, we think, and is overruled without further comment.

We find no error in the record, and the judgment of the trial court is affirmed.

Affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.