**CITY OF RIVER OAKS v. LAKE WORTH VILLAGE et al.**

No. 15147.

Court of Civil Appeals of Texas.
Fort Worth.

June 23, 1950.

Rehearing Denied July 14, 1950.

George P. Gleeson, Fort Worth, for appellant.

Robert Sansom, Fred S. Dudley and Marvin B. Simpson, Jr., all of Fort Worth, for appellees.

SPEER, Justice.

On October 26, 1949, appellees, designating themselves as "Lake Worth Village" and "Sansom Park Village" respectively, instituted separate suits against appellant City of River Oaks, an admitted legally incorporated home rule city or municipality, seeking a declaratory judgment holding void an amended ordinance theretofore passed by the Council of the City of River Oaks, which had the effect of enlarging the latter's corporate boundaries so as to include the area embraced by the two plaintiffs. Plaintiffs, appellees here, sought to enjoin appellant from exercising jurisdiction and dominion over the territory by such attempted inclusion. Nine persons who were residents or property owners in the area intervened as plaintiffs, adopting one or the other of the petitions of appellees,

and sought additional relief relative to taxation and municipal dominion.

The suits were consolidated and tried as one to the court. The ordinance of annexation or enlargement of the corporate limits of the City of River Oaks was by the court declared void and the appellant City was enjoined from its enforcement; this appeal followed.

The transcript before us is lengthy, since all pleadings in the two independent suits are necessarily included. The petitions of the two appellees are substantially the same except for names and dates on which each is alleged to have been incorporated into statutory villages.

The pleadings of the City of River Oaks, defendant, and appellant here, are likewise duplicitous, all making for a lengthy transcript.

It was stipulated by the parties at the trial: "That the allegations of fact contained in the pleadings of the respective parties to the cause, as well as all of the exhibits attached to any of such pleadings, should be considered as constituting evidence adduced by said parties on the trial of the cause." In addition thereto a plat showing the area involved and a copy of appellant's charter was introduced in evidence. The plat and charter are before us. As would be expected, the allegations of fact by the respective parties are highly contradictory, but as stipulated they constitute the evidence introduced by each in support of their respective contentions as distinguished from agreed facts. They thus present an issue of fact or at least one of mixed fact and law. We shall keep these things in mind.

On and prior to January 25, 1949, appellant City of River Oaks was a home rule city under the Constitution and applicable laws of this state. Appellant's charter provides for four different means by which its boundaries can be enlarged, each of which is adequately authorized by law. Only one of such means was attempted to be followed in this controversy, namely, section 1, Chapter 8 of the charter, which reads: "The City Council shall have power by ordinance to fix the boundary limits of the City of River Oaks; and to provide for the altera-

tion and the extension of said boundary lines and the annexation of additional territory lying adjacent to the City, with or without the consent of the territory and the inhabitants annexed. Upon the introduction of any such ordinance in the City Council, it shall be published in the form in which it may be finally passed, in a newspaper published in the City of River Oaks, at least one time, and said ordinance shall not thereafter be finally acted upon until at least thirty days have elapsed after the first publication thereof; * * *."

Appellant's pleadings assert substantially that at a regular meeting of the City Council of River Oaks, held on January 25, 1949, there was introduced into said Council an ordinance for the expansion of its boundaries and annexation of territory, designated in the record as "Exhibit A," being ordinance No. 125, which particularly described the area to be added to appellant City. That in conformity with the charter previously above quoted, the proposed ordinance No. 125 was read before the Council and ordered published on January 28, 1949. This being done, the proceedings were interrupted by a suit which challenged the authority of the individuals purporting to act as City Councilmen of appellant. See Germany et al. v. Pope et al., Tex.Civ.App., 222 S.W.2d 172. That after a final determination of the cited case, on October 11, 1949, at a regular meeting of the City Council of appellant, "the said ordinance No. 125 was brought before the said City Council for final reading and consideration thereof, following which such ordinance was amended and adopted as amended (Exhibit B herein) which (amendment) in effect eliminated a portion of the area as described in Exhibit A and B of plaintiffs' petitions * * *." Appellant further alleged substantially that ordinance No. 125 *as amended* (our emphasis) became effective when adopted by the Council, shown to be on October 11, 1949, and that the Mayor ordered an entry to be made in the City's records "That the area described in said ordinance as adopted thereby became a part of the City of River Oaks."

Ordinance No. 125 as amended, after its introduction on January 25, 1949, and as published on January 28, 1949, and prior to its final adoption and passage on October 11, 1949, apparently eliminated a comparatively large area from that contained in the original ordinance introduced and published in and by the Council during the January proceeding. A fair estimate of the area eliminated by the amended ordinance as finally adopted and passed, when calculated by the scale of the plat before us, would be approximately 1,000 acres. In oral arguments before us, it was asserted by appellees, and not denied by appellant, that the area eliminated by the amendment embraced what is known as "Indian Oaks" community, a thickly populated and well improved area. The amended ordinance No. 125 as finally adopted on October 11, 1949, and relied upon by all parties, was never published subsequent to its introduction as amended. The amended ordinance contains section 6, which reads and concludes as follows:

"This ordinance shall be published and passed in the manner provided in Chapter 8, section 1 of the charter of the City of River Oaks.

"Adopted this the 11 day of October, A. D. 1949 as amended.

"Approved John H. Boyd, Mayor."

There was no contention made by appellant in the trial court, nor does it make any contention here, that the suit was prematurely brought before it could publish the amended ordinance No. 125, wait thirty days thereafter and put it into effect under the provisions of the above quoted charter provision. Apparently it relies upon the validity of the amended ordinance and the procedure followed by it as detailed by us to effectively include the area described therein as a part of the City of River Oaks by pleading and thereby proving under the stipulations its Mayor ordered an entry to be made in its records, "That the area described in said ordinance as adopted thereby became a part of the City of River Oaks."

Going back in point of time after the original ordinance had been introduced into appellant's Council on January 25, 1949, and published as introduced on January 28, 1949. appellee "Lake Worth Village" alleged that

it by statutory means on February 19, 1949, was duly and legally formed into a municipality of that name, and appellee "Sansom Park Village" likewise alleged that it was by virtue of statutory provisions duly incorporated into a municipality as a village by that name on March 5, 1949. There are allegations of fact, which under the stipulations became evidence, to the effect that the area claimed by appellant to have been annexed to and made a part of the City of River Oaks under ordinance No. 125 as amended, adopted and passed embraced all of "Sansom Park Village" and a part of "Lake Worth Village."

In its appeal from the judgment holding that appellant's proposed ordinance of annexing territory was void and the issuance of the injunction against the enforcement thereof, appellant presents 34 points of error. These points raise in many ways matters similar in their nature and need not be discussed separately.

Under these points appellant challenges the court's judgment in overruling its plea in abatement to appellees' cause of action duly plead and presented, and the judgment as entered holding ordinance No. 125 void and in granting the writ of injunction against appellant for the enforcement of said amended ordinance. It is argued under appropriate points relating to the overruling of appellant's plea in abatement, in effect, that appellees could not maintain this suit as municipal bodies or as individuals since in its nature this suit was a collateral attack upon the ordinance as adopted and passed, and contends that such suit could only be maintained in a quo warranto proceeding.

Referable to the last mentioned contention, we think that if the amended ordinance as introduced, adopted, passed and put into effect on October 11, 1949, was void because the provisions of the charter had not been complied with, then appellees could maintain the suit.

As we view the record, the controlling question for our determination is: Was the amended ordinance as passed, under the conditions above detailed by us, void? This question cannot be answered solely by a determination of whether or not the introduction in the Council of the original ordinance (Exhibit "A") on January 25, 1949 and its publication in that form on January 28, 1949, constituted the "commencement" of the proceedings to annex the area described in the amended ordinance (Exhibit "B") in the manner followed by appellant. In any event the provisions of the charter referable to introduction, adoption, publication in the form it may finally be passed and the waiting period of 30 days after publication before it shall finally be acted upon, must be observed. We shall presently discuss the last mentioned phase of the case. We have not been cited to any authority on the precise point now before us, nor have we been able to find one.

Appellant cites and relies upon such cases as State ex rel. Binz v. City of San Antonio, Tex.Civ.App., 147 S.W.2d 551, writ refused; Beyer v. Templeton, Tex.Sup., 212 S. W.2d 134; City of Terrell Wells v. City of San Antonio, Tex.Civ.App., 216 S.W.2d 657, writ refused, all of which cases involved city charter provisions similar to the one before us; and other cases of equal dignity are cited, which involve other charter provisions, in support of the contention that appellant having "commenced" its proceedings to annex the described area before appellees were incorporated into statutory villages, appellant then and there acquired exclusive jurisdiction and dominion over the area and retained them throughout this whole transaction. There can be no question that the rule in this respect announced in the cited cases and many others to the same effect is the settled law of this state. Appellees do not contend otherwise but frankly admit this as a settled principle. In the cited cases it appears that the ordinance of annexation proposed and published was adopted and put into effect and notwithstanding delays in passage and publication the proceedings were held to have been commenced on the date of the introduction of the ordinance in the Council. The validity of the ordinance as adopted and put into effect by appellant before being enjoined depends upon whether or not the City Council followed the provisions of the charter relating to such attempted annexation. It

could not accomplish such purpose and annex additional territory to its municipality without complying with the plain terms of its charter provisions applicable in such cases.

■ The first part of section 1, Chapter 8 of appellant's charter declares its right to fix its boundaries, to extend its limits, and the annexation of additional territory with or without the consent of the inhabitants of such added territory. This section of the charter further provides: "Upon the introduction of any such ordinance in the City Council, it shall be published in the form in which it may be finally passed, in a newspaper published in the City of River Oaks, at least one time, and said ordinance shall not thereafter be finally acted upon until at least thirty days have elapsed after the first publication thereof." It is the well recognized rule in this state to properly construe such instruments and documents as the provisions of a city charter that every word, phrase, and expression therein will be considered and interpreted as if each had been deliberately chosen and used for a purpose, and this purpose when ascertained must be given effect. City of Beaumont v. Priddie, Tex.Civ.App., 65 S.W.2d 434; Vol. 2, McQuillin on Municipal Corporations, 3d Ed., sec. 9.22, p. 532. (The last authority is cited in appellant's brief but we do not have access to it.) Then we may ask ourselves, were all of the requisite provisions of the charter complied with? They must be before an ordinance can become valid. If it is not valid it is void. Unquestionably an ordinance was introduced in the Council on January 25, 1949. The one so introduced was published in a newspaper published in the City of River Oaks on January 28, 1949; yet the charter provides for its publication "in the form in which it may be finally passed." It is undisputed that the ordinance which was finally passed on October 11, 1949, was materially different to the one that was published, in that a comparatively large body of land was included in the published ordinance and was omitted from the one finally passed. The later amended ordinance was never published. It will be presumed that the requirement of publication was deliberately inserted in the charter for a purpose. In Town of Blooming Grove v. City of Madison, 253 Wis. 215, 33 N.W. 2d 312, 315, it was said: "The purpose of the introduction and publication of the (annexation) ordinance is to advise those who are interested that the matter is before the common council for consideration." Naturally there was some information in the publication as made, but it was as misleading as it was informative, when considered with reference to the amended ordinance later passed and adopted. An interested person who saw or knew of the publication quite perceivably could have been satisfied with the proposition of the proposed annexation as published, considering the area therein described, whereas the same person could have had a plausible objection to the annexation of a different and much less area which had a materially less value for taxing purposes, such as the area included in the amended ordinance without publication in "the form in which it may be (and was) finally passed."

■ The requirement in the charter that the annexation ordinance should be published in the form it may finally be passed must of necessity have a material significance. Such publication in that form had a dual purpose, one as important as the other. First, to inform interested persons that the Council was considering the annexation of additional territory to the municipality; second, to give notice that if it should do so, the area described would be annexed. There can be no doubt that at any time before the expiration of the 30 day waiting period after publication the Councilmen could change their minds and never take any final action thereon and thus never put the project into effect.

Again it would be unreasonable to say that because when appellant's Council introduced and published the first ordinance in January, 1949, and did not thereafter pass it and put it into effect, that such original actions could and would form the basis for the commencement of a proceeding that would vest in appellant the exclusive jurisdiction and dominion over the area for all time to come.

■ Much is said in the briefs of all parties about the meaning of the word "may" as used in the charter provision. To us it presents no great problem when viewed in connection with the sentence containing it, viz., "Upon the introduction of any such ordinance in the City Council, it shall be published in the form in which it *may* be finally passed * * *." We think the quoted provision is a recognition of the option of the Council to either reject the proposed ordinance, or to adopt, pass and put it into effect in the manner prescribed by the charter •and if so done the publication must be in the form the Council "may" at its option finally adopt and pass it.

It is no answer or excuse to say that the publication of the ordinance in the form it may finally be passed is not essential to the validity of the ordinance of annexation when the City has authority to annex the territory with or without the consent of the inhabitants of the annexed territory. Theoretically at least, officials acting in the capacity of councilmen strive to learn the will and wishes of the people they represent and when possible, without detriment to the general public's interest, will lend a sympathetic ear to the requests and protests, if any, from those whom they presently represent as well as those whom they may represent if additional territory should be· annexed. Without publication of the ordinance in the form in which it was finally passed, no interested person, in so far as this record shows, had an opportunity to either approve or disapprove of what the Council was about to do and did do. We think this is what the framers of the charter had in mind when they wrote that provision into the charter. Whatever motive prompted the requirement, it must be presumed to have been a good one and must be observed be-

fore an effective and legal ordinance of annexation could be passed.

We are persuaded that the City Council of appellant also recognized the necessity of publication of the amended ordinance in the form in which it was adopted. As pointed out above, the amended ordinance on its face provided, "This ordinance shall be published and passed in the manner provided in Chapter 8, section 1 of the charter of the City of River Oaks." The amended ordinance as adopted and passed was never published in the form it was passed as required by the charter; appellant admits in its pleading and evidence that the ordinance as amended was adopted, passed and its Mayor ordered it to be put into effect, making the area described therein a part of appellant City, all on the same day, to-wit, October 11, 1949.

■ In view of what we have said, it is obvious that we think it immaterial as to when appellees became incorporated as villages. The test is, did appellant comply with the mandatory requirements of its charter in attempting to annex the territory described in the amended ordinance. We think it did not.

The trial court held that the attempted annexation was void because of the failure to publish the ordinance in the form it may be finally passed and in acting upon same within less than 30 days after such publication.

We believe the court properly interpreted the whole proceeding as presented by the pleadings which made up the evidence. It naturally follows that if the ordinance of annexation is void the trial court properly enjoined its enforcement. We hold that the judgment was correct and overrule all points of error and order that the judgment be and it is hereby affirmed.