STATE of Texas ex rel. W. M. ROSE et al.,
Petitioners,

v.

CITY OF LA PORTE, Respondent.

No. A–10162.

Supreme Court of Texas.

Jan. 6, 1965.

Rehearing Denied Feb. 17, 1965.

Sears & Burns and Shannon L. Morris, Houston, Joe G. Resweber, County Atty., W. K. Richardson, Asst. Co. Atty., John Wildenthal, Jr., City Atty., Houston, for petitioners.

Kiibler & Kiibler, La Porte, Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., Dallas, for respondent.

SMITH, Justice.

This is an action in the nature of a quo warranto originally brought by the State of

Texas, upon the relation of three individual relators against the City of La Porte, challenging the constitutionality of the *Home-Rule Charter* of the City of La Porte and the validity of certain annexation ordinances enacted under authority of the claimed void "Home-Rule Charter."

The petitioners shall hereinafter be designated as the State, and the respondent as La Porte.

The original petition was filed after the County Judge of Harris County, Texas, had declined to order an election to incorporate a proposed town of Bayshore in May, 1962. Such declination was on the ground that La Porte Ordinances 497, of May 4, 1956, and 624, of December 31, 1960, had placed under first reading the territory involved in the Bayshore petition. The individual relators alleged that both ordinances were void because La Porte did not have 5000 inhabitants at the time of the adoption of its home-rule charter on March 22, 1949.

On March 15, 1963, the State filed its Third Amended Original Petition in the nature of a quo warranto upon the relation of the original three individual relators, and in addition thereto, upon the relation of the City of Houston. From the date of the filing of this petition the City of Houston and the City of La Porte became the principal actors in a vigorous battle over the question as to whether or not the territory described in a number of La Porte ordinances was lawfully a part of the City of La Porte, the State contending that La Porte did not, on March 22, 1949, have a population of more than 5000 inhabitants

as required by Article XI, Section 5,[1] of the Constitution of The State of Texas, Vernon's Ann.St.

The validity of La Porte Ordinance No. 587 was additionally attacked, alternatively, on the ground that even if the City of La Porte were a home-rule city and all of the ordinances of annexation of La Porte were ordinances of annexation by a home-rule city, nevertheless, Ordinance No. 587 was void and invalid and afforded no basis for the exercise of either municipal authority or annexation jurisdiction, because the description of the boundaries of the territory purported to be annexed contained in Ordinance No. 587 was so defective as to describe no territory at all.

The State further alleged, in the alternative, in this Third Amended Original Petition, upon which the case went to trial, that the territory purportedly described in and contained in each of the La Porte annexation ordinances under attack was actually a part of the City of Houston and was under the annexation jurisdiction of the City of Houston.

The trial court, apparently following the theory of the State that a home-rule status must be based upon the *fact* of the existence of more than 5000 population and not upon a mere declaration by the Legislature or by the city council that such a home-rule status existed, and apparently being of the opinion that where quo warranto places such fact in issue the courts have both the constitutional power and the constitutional duty to determine that fact judicially, submitted special issues[2] to the jury, the trier of the

1. Article XI, § 5 provides, in part: "Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State; * * * ".

2. SPECIAL ISSUE NO. 1: "Do you find from a preponderance of the evidence that, on March 22, 1949, the City of La Porte did not have more than 5,000 inhabitants?"

 Answer: "It had more than 5,000 inhabitants."

 SPECIAL ISSUE NO. 2: "Do you find from a preponderance of the evidence that, on June 6, 1960, a projection of the course of the center line of the last meander of Taylor Lake and Bayou would

facts in this case, for determination. These special issues were submitted in the face of the contention of La Porte throughout the trial that the determination of the question of whether La Porte had a population of more than 5000 on March 22, 1949, was not a fact issue, and that the finding of the governing body of the City of La Porte was conclusive, having been made in good faith, and there being neither pleadings nor proof of fraud.

The trial court disregarded the jury's answers to Special Issues 1 and 4, and entered judgment that the Home-Rule Charter of La Porte was wholly void and invalid; that all annexation ordinances adopted by La Porte after March 22, 1949, were wholly void and invalid; and La Porte was by the judgment perpetually enjoined from exercising or claiming any municipal authority or annexation jurisdiction within any portion of the area involved.

The Court of Civil Appeals reversed and rendered judgment in favor of La Porte, holding La Porte to be a valid home-rule city, and that La Porte had validly adopted its annexation ordinances, including Ordinance No. 587, covering the territory in question and that such ordinances were adopted prior in time, thereby taking precedence over the Houston ordinance. 376 S.W.2d 894.

We granted the State's application for writ of error to consider the above holdings of the Court of Civil Appeals. We have concluded to affirm that part of the judgment of the Court of Civil Appeals declaring La Porte to be a valid home-rule city, but that part of the judgment declaring that

Ordinance No. 587 contained a valid description of the proposed annexed territory, is reversed and judgment is here rendered that the description is void; and, therefore, Ordinance No. 587 is of no validity.

*Validity of La Porte's Home-Rule Charter*

Perhaps this Court would be justified, insofar as this particular case is concerned, in reaching a judgment favorable to La Porte on the question of whether or not La Porte had a population of more than 5000 on March 22, 1949, by holding that there is evidence of probative force to support the jury's answer to Special Issue No. 1, and thereby forego, at this time, passing upon the important law question of whether the governing body of a city is properly empowered to determine whether or not, population wise, its city is eligible to adopt the powers and privileges granted by Article XI, Section 5, of the Texas Constitution. An answer to this question is important not only to La Porte, but to all cities in Texas which are similarly situated. Therefore, we squarely meet the issue presented in an effort to eliminate the uncertainty which would surely continue to exist were we to elect to pursue the course followed by the trial court.

A reasonable construction of the pertinent provisions of Article XI, Section 5, commonly known as the Home-Rule Amendment, leads to the conclusion that, in adopting the Home-Rule Amendment to the Constitution, the voters had no intention of leaving the matter of population determination open indefinitely and subject to question until finally settled by judgment in a quo warranto judicial proceeding.

not have intersected the center line of Clear Lake for a corner?"
Answer: "Such projection would have intersected such center line of Clear Lake for a corner."
SPECIAL ISSUE NO. 3: "Do you find from a preponderance of the evidence that La Porte Ordinance No. 587 as passed by the City Commission on June 6, 1960, contained, between the first and second running calls of ordinance 587 as appearing in Defendant's Exhibit 9A, a

call south from Spencer Highway down the east line of the W. M. Jones survey to the south line thereof?"
Answer: "No."
SPECIAL ISSUE NO. 4: "Do you find from a preponderance of the evidence that the La Porte City Commission intended La Porte Ordinance No. 587 to have the east line of the W. M. Jones survey as one of its boundaries?"
Answer: "Yes."

The Enabling Act, Article 1165, Vernon's Annotated . Civil Statutes, passed by the Legislature after the adoption of the Home-Rule Amendment, provides, in part that:

> "Cities having more than five thousand inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, *subject to such limitations as may be prescribed by the Legislature.* * * *" (Emphasis added.)

This "subject to" provision is exactly as it appears in the Constitution.

The State argues that the Home-Rule Amendment is not self-executing, and assuming this to be true, it argues that the Enabling Act is controlling. It then reasons that since the Enabling Act does not expressly grant to the governing body the power to determine population, and since there is no language in the Enabling Act which can be construed to impliedly grant to the governing body the power to conclusively determine population, it follows that the most that could be implied from the series of articles of the Statutes, beginning with Article 1165, supra, and ending with Article 1170, is that the governing body, upon the assumption that the City has more than 5000 inhabitants, may initiate proceedings to adopt or amend a charter, *"but that the basis for making the assumption, the fact of population, remains to be determined as a fact when questioned by quo warranto."* (Emphasis added.) Thus, the State seeks to draw a distinction between determinations of population under constitutional provisions and under statutory provisions. We cannot see any reasonable basis for drawing this distinction. Certainly, the cases which we think control the result to be reached do not support such contention. The case of Williams v. Castleman, 112 Tex. 193, 247 S.W. 263 (1922), cited with approval in the later case of Town of Freeport v. Sellers, 144 Tex. 389, 190 S.W.2d 813 (1945), a case which dealt directly with a constitutional requirement, although concerned with a different constitutional provision, is substantial authority supporting La Porte's argument that the matter of population determination is placed directly in the hands of the City's governing body, although the Constitution and the Enabling Act do not expressly so provide, and that when the governing body once ascertained the fact that La Porte had a population of more than 5000 at the time of the adoption of its Home-Rule Charter, such ascertainment is presumed to have been validly exercised in the absence of allegations and of proof of fraud, bad faith or abuse of discretion.

■ The State seeks to distinguish the Castleman case upon the ground that it was concerned with Article V, Section 18, of the Constitution rather than Article XI, Section 5, and the further ground that the Castleman case mentioned commissioners' courts. We find no merit in this contention. The case of Town of Freeport v. Sellers, supra, deals directly with Article XI, Section 5, supra. Although, in that case there was no actual contest as to the fact of population, this Court stated that in view of the rule announced in Castleman, such a contest could not have been sustained. The governing body of a city is not required to look to the Legislature for a grant of power to act. Such power is given by the Constitution. The governing body only looks to acts of the Legislature to ascertain if it has placed any limitations on the power to act as granted by Article XI, Section 5. See Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282 (1948); Yellow Cab Transit Co., Inc. v. Tuck et al., Tex.Civ.App. (1938), 115 S.W.2d 455, wr. ref.; City of Houston v. City of Magnolia Park, 115 Tex. 101, 276 S.W. 685 (1925). In the Magnolia Park case, it was pointed out that the Legislature cannot deprive any city " * * of its right to adopt and amend its own charter at any time after it had more than 5,000 inhabitants." This Court further said in that case that "the Legislature can *limit* the manner of adopting or amending a

charter by a home rule city, but it cannot *destroy* that right."

■■ It is argued that the history of the constitutional provisions relating to population, and the decision in the case of Brooke v. Dulaney, 100 Tex. 86, 93 S.W. 997 (1906), lead to the conclusion that when the Legislature proposed, and the electorate adopted the Home-Rule Amendment to the Constitution, the intention was that the population be determined by the preceding United States census. The Magnolia Park case cites the Castleman case in support of the Court's rejection of this contention. We are urged to overrule the Magnolia Park case. This we decline to do. In the Castleman case the argument was made that:

" 'Whenever the taking effect of any law is made to depend upon the number of population of any locality, and the law itself makes no provision for the method of determination and ascertainment of the number of population of said locality, then such population is determined solely and only by the most recent United States census.' "

The Court held that the Brooke case was not applicable; and, in declining to follow the argument advanced, the Court held in part:

"If the commissioners' court is restricted to population, as determined by the United States census reports, available but once in 10 years, then the express provision that the county is to be divided into precincts for the convenience of the people (a power which we have seen is potential and may be acted upon at all times) is defeated by the suggested limitation of the census reports."

The decisions of this Court in both Castleman and Magnolia Park are consistent with and carry into effect the intention of the people when the Home-Rule Amendment was adopted. It would be wholly unrealistic to hold that the electorate at the time of the adoption of the amendment intended that the census rule should control the determination of population. We are of the opinion, and so hold, that the population determination should be lodged with the governing body of the city, where the constitutional and the statutory enactments, as here involved, fail to specifically prescribe a method for determining the population. This leads to the ultimate conclusion that the governing body of La Porte had the implied authority to determine and find as it did that on March 22, 1949, the population of the City of La Porte was more than 5000. This conclusion is strongly supported in all Texas cases, which have come to our attention, wherein the question of determination of population of a city is involved.

The case of City of Farmersville v. Texas-Louisiana Power Co., Tex.Civ.App. (1930), 33 S.W.2d 272, reversed by the Supreme Court, 67 S.W.2d 235 (1933), on another question, is analogous. That case involved the construction of Article 1119, Vernon's Annotated Civil Statutes, giving to the governing body of all cities and towns in Texas of over 2000 population the power to regulate by ordinance, the rates, etc., to be charged by all water, gas, light and sewer companies. Although Article 1119 did not expressly say so, the Court overruled the contention there made that the Legislature intended to take any United States Census report as a basis for the required population, citing the Castleman and Magnolia Park cases. Following the citations of these cases, the Court made the following significant holding, which can and should be applied with equal force in determining the issue in the present case:

"We think it is reasonably apparent that the population of the city or town made the subject of this legislative enactment must be determined at the time the particular city or town attempts to exercise the delegated power granted by the enactment. We agree with appellant's second contention that the ascertainment of the fact of the requi-

site population is committed to the governing body of the city or town desiring to avail itself of the provisions of article 1119. When a governing body acts under the provisions of such article, it must be presumed that it did determine the fact of the existence of the necessary population, and such presumed finding can only be attacked on the ground of fraud, and that this ground must be both pleaded and proven by the party attacking the power of any city acting under the provisions of article 1119."

*Validity of La Porte Ordinance No. 587*

Ordinance No. 587 was challenged as being void because of an inadequate description of the territory to be annexed. The first three calls in the ordinance read as follows:

"Beginning at a point where the South right-of-way line of Spencer Highway intersects the center line of the T & N O R.R. right-of-way.

"THENCE in a westerly direction along the South right-of-way line of Spencer Highway to a point for corner in the East line of the W. M. Jones Survey, A–482;

"THENCE westerly along the South line of the W. M. Jones Survey A–482 to a point in the East right-of-way line of Red Bluff Road for a corner;"

The following rough diagram will illustrate the problem:

X—The point referred to in the Second call of Ord. 587.

Y—The point referred to in the Third call of Ord. 587.

[Z]—The point Respondent seeks to establish.

There is a gap of approximately 1⅓ miles between the South line of Spencer Highway and the South line of the W. M. Jones Survey (i. e., between points X and [Z] in the above diagram). Respondent first contends that this gap can be closed by using certain rules of construction. Two such rules are suggested by respondent:

Running the calls in reverse, and presuming that the boundary line between two points is a straight line. We conclude that neither rule is applicable to the facts before us.

By running the calls in reverse, two points cannot be established which could then be connected by the presumed straight line. In attempting to reverse the third call, the beginning would be at the intersection of Red Bluff Road and the south line of the W. M. Jones survey, and then easterly along that south line to "thence." There is nothing in the call to tell us how far to proceed along the Jones survey's

south line. Respondent contends that, since no distance is given, the boundary would go to the east end of the south line of the Jones survey (point [Z] in the diagram above). If such a presumption is made, then a point is fixed which then can be connected with the known point at the end of the second call by the presumption of a straight line. This, however, is something more than merely reversing the calls—it is the addition, by a presumption, of information not included in the calls being reversed. We know of no authority for such a presumption. It is clear that going any distance along the south line of the Jones survey short of the east end of that line would likewise yield a point which could then be connected by a straight line to the known point at the end of the second call. We conclude that running the calls in reverse would not be of any assistance in establishing a point by which this boundary could be closed.

Respondent's second contention seems to be that a call can be added to an annexation ordinance by showing only that the enacting body intended the call to be included. In support of this contention, respondent calls attention to the testimony of the mayor, the city commissioners, and the city attorney of La Porte that a call was inadvertently omitted, and that the missing call would extend south from Spencer Highway along the east line of the W. M. Jones survey to its south line (i. e., from X to [Z] in the diagram, supra). Such a call would, of course, close the boundary.

 There is no Texas authority which can be said to have established the principle asserted by respondent. Many of the cases cited by the respondent deal with situations where an ordinance itself contains sufficient information from which the court can ascertain the intent of the enacting body: State ex rel. American Manufacturing Co. v. City of Ft. Worth, Civ.App., 339 S.W.2d 707, n. r. e.; Lower Nueces River Water Supply District v. Cartwright, Civ.App., 274 S.W.2d 199, n. r. e.; City of West Orange v. City of Orange, Civ.App., 300 S.W.2d 705, n. r. e.; and Parker v. Harris County Drainage District No. 2, Civ.App., 148 S.W. 351, error refused.

Thus, in the State ex rel. American Manufacturing Company case, supra, the description in the annexation ordinance was found to be adequate, the court saying:

"The enactment of such an ordinance is legislative in character and, if the description in the same cannot be literally applied on account of inaccuracy, a *reasonable construction is to be made of the whole of the ordinance provisions* in order to carry into effect the intent of the body which enacted it." [Emphasis added.]

In the City of Orange case, supra, there were incorrect distance calls, but the descriptions also contained calls for monuments and natural objects easily located. The court used these monuments and objects to close the boundary.

These cases do no more than apply accepted rules of construction in construing municipal ordinances containing inaccurate descriptions. As pointed out above, however, such a course is unavailable in this case for the reason that there are no rules of construction which would apply to the facts of this case so as to close the boundary.

The case of Grisham v. Tate, Civ.App., 35 S.W.2d 264, writ dismissed, does not support respondent. The Court of Civil Appeals said that the court in Grisham supplied the wording necessary to close the boundary "because it found that the intent was evident from the circumstances." However, that case involved a description the language of which, like that in the above cited cases, could be construed to close the boundary. In that case the defective call read:

"Thence S. 30 E. with said Adkins W. line 1085 vrs. to the F. T. Turner's S. W. corner in the E. line of the Burchard Survey."

It should be noted that there was a call for distance along the Adkins west line. That distance, 1085 varas, fixes a point which can then be connected by a straight line to the S.W. corner of the F. T. Turner tract. The point thus fixed happens also to be the S.E. corner of the F. T. Turner tract. Thus the court was able to construe the language of the description so that the boundary could be closed. The court's construction did not change the course of any line in the original field notes and did not create any additional corners or touching points.

In the case before us, there is no call for distance as there was in the Grisham case. If there were, the boundary could probably be closed by reversing the calls to supply a point to connect up with the point described in the first running call. The Grisham opinion furnishes us with no arguments in favor of presuming a call for distance in the present case.

■ The respondent cites authorities favoring a more liberal construction of municipal boundary descriptions than boundary descriptions in grants or contracts. See 2 McQuillin, Municipal Corporations, 3rd Ed., page 261, § 7.04. We do not disagree with the views expressed by such authorities. On the other hand, these authorities seem eminently sound because they favor a reasonable construction of an inaccurate boundary description. We do not believe that the construction favored by respondent of the description in La Porte's Ordinance No. 587 is a reasonable one. The only

reasonable construction of that description is that it is impossible to close the boundary by using it.

The cases of Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070 (1927), and City of Irving v. Callaway, Tex.Civ.App., 363 S.W.2d 832, wr. ref., n. r. e. (1962), are more nearly in point. It was held in the Trimmier case that where the boundaries of a water district lacked 2½ miles of closing, the district was not validly formed. The same holding was made in the City of Irving case, where the boundaries of the attempted annexed territory described in an ordinance lacked 5½ miles of closing.

The final question to be resolved is whether or not the defect in Ordinance No. 587 was cured by subsequent validating acts of the Legislature. Several statutes are cited which, respondent says, were enacted to cure defects in proceedings to adopt home-rule charters and to annex territory: Vernon's Annotated Texas Statutes Nos. 976b (1949); 974d–6 (1957); 974d–9 (1961); 1174a–1 (1951); 1174a–2 (1953); 1174a–4 (1959); 1174e (1961).

Ordinance No. 587 was adopted June 6, 1960. Therefore, the only two of the above cited statutes which could possibly be said to validate the ordinance are: Art. 974d–9 and Art. 1174e.[3] We may immediately dismiss Article 974d–9 from further consideration, since it expressly omits annexation proceedings from its coverage:

"* * * All acts of the city officers and officials of any such city, *other*

---

3. "Art. 1174e. Section 1. All ordinances, resolutions and proceedings passed and adopted and all contracts made pursuant thereto, prior to the 1st day of March, 1961, by a home rule city undertaking to annex adjacent and contiguous territory to its corporate limits by virtue of the provisions of Article 1175 of the Revised Civil Statutes of 1925 and the amendments thereto, or by virtue of the applicable provisions of its city charter, are hereby ratified and confirmed, and such extensions of the city limits of such cities so undertaken, as well as all proceedings and contracts taken or made in pursuance thereof and the exercise of dominion and governmental functions over such

added territory, by annexation, shall be deemed and held valid in all respects and to the same extent as if done under legislative authority previously given.
"Sec. 1(a). Nothing herein shall validate any annexation proceedings where no bonds have been voted or issued by the annexing municipality prior to March 1, 1961, and after the commencement of such annexation proceedings.
"Sec. 2. The effective date of this Act shall be January 1, 1962, and the provisions of this Act shall not apply to any city if its annexation proceedings are involved in litigation at the time this law becomes effective."

*than acts pertaining to annexation,* are hereby in all things validated." (Emphasis added.)

The scope of the validating power of Article 1174e need not be defined in this case because respondent has not brought itself within the requirements of Section 1(a) of Article 1174e. We find nothing in the record to indicate that, between June 6, 1960—the day the annexation proceedings commenced—and March 1, 1961, any bonds were noted or issued by La Porte. Therefore the statute does not apply to Ordinance No. 587. We conclude, then, that there are no statutes which validate La Porte Ordinance No. 587.

The judgment of the Court of Civil Appeals upholding the validity of Ordinance No. 587 of the City of La Porte is reversed and judgment is here rendered that Ordinance No. 587 is void and of no effect. In all other respects the judgment of the Court of Civil Appeals is affirmed.

Affirmed in part, reversed and rendered in part.