**CITY OF HOUSTON, Appellant,**

v.

**HARRIS COUNTY EASTEX OAKS WATER AND SEWER DISTRICT**
*et al., Appellees.*

No. 15342.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Feb. 20, 1969.

Rehearing Denied March 27, 1969.

943

Wm. A. Olson, City Atty., Joseph G. Rollins, Senior Asst. City Atty., Houston, for appellant.

Burford, Ryburn & Ford, Logan Ford, J. Dan Bohannan, Dallas, Harold B. Mills, Houston, for appellees.

On Motion for Rehearing

PEDEN, Justice.

Appellant's motion for rehearing is granted. Our opinion of November 21, 1968 is withdrawn and the following is substituted for it:

The City of Houston has perfected this appeal from an order permanently enjoining it from proceeding further under its Ordinance No. 67–262 with annexation of an area described in the ordinance as Portion No. 1 (consisting of 2.119 square miles located between the Cities of Houston and Humble), from levying taxes and from acquiring by annexation the properties and assets of the Harris County Eastex Oaks Water and Sewer District. Trial was to a jury, but when the parties had completed their presentation of evidence neither party submitted any jury issues and the trial court granted appellees' motion for instructed verdict. Sixty residents of Portion No. 1 joined the Water and Sewer

District as parties plaintiff. We will refer to the plaintiffs-appellees as Eastex and to the City of Houston as Houston. The City of Humble was joined as a party defendant by Eastex but was dismissed by the trial court and is not involved in this appeal.

In its petition Eastex attacked the validity of Ordinance 67–262 on several bases but has now abandoned all of them but one: that the area which Houston seeks to annex by such ordinance is not adjacent and contiguous to Houston's lawful boundaries because certain 1965 annexation ordinances are void and it was by such void ordinances that Houston purports to have annexed the only areas which would connect Houston to the territory covered by the inchoate ordinance. The 1965 ordinances of which Eastex complains consist of Ordinance No. 65–1562 (which we will refer to as the Notice Ordinance) and Ordinances No. 65–1556 AR and No. 65–1556 BR (which we will refer to as the Annexation Ordinances).

It is uncontroverted that if such 1965 annexation is void then the land sought to be annexed in 1967 by Ordinance 67–262 would not be contiguous to Houston, so it would not meet the contiguity requirements of Article 970a, Vernon's Texas Civil Statutes, the Municipal Annexation Act. Eastex asserts that the 1965 Notice Ordinance and Annexation Ordinances were void because 1) Houston attempted to annex areas already within the corporate limits of the City of Humble, 2) Houston attempted to annex part of the extraterritorial jurisdiction of the City of Humble, 3) there is no ascertainable area encompassed within either the Notice Ordinance or the Annexation Ordinances because of defects, gaps, hiatuses and omissions in the metes and bounds descriptions contained in each of these ordinances, 4) there are discrepancies between the territory purportedly included within the Notice Ordinance and that attempted to be included within the Annexation Ordinances and 5) Houston failed to comply with the notice requirements of Art. 970a, Sec. 6, V.A.C.S.

This suit constitutes a collateral attack on 1967 Annexation Ordinance 67–262 by means of a collateral attack on the 1965 ordinances; it is not in the nature of a quo warranto proceeding and the State is not a party. Houston has shown that since the 1965 ordinances were enacted it has exercised dominion over the territories annexed (or sought to be annexed) and asserts that this was such de facto dominion as constituted color of law.

The Texas Supreme Court stated in Deacon v. City of Euless, 405 S.W.2d 59 (1966): "A taxpayer may maintain a suit challenging the validity of ordinances which are utterly void because not authorized by law or color of law." And the corollary to that principle of law is: unless the act of extension or annexation is wholly beyond the powers of the municipality, annexation may be challenged only by a direct suit in the nature of a quo warranto or in a proceeding to which the state is a party. 39 Tex.Jur. 23 435, Municipal Corporations, § 83, citing many Texas cases. In the event annexation proceedings taken by a city were not void but were only an irregular exercise of power, they are not subject to a collateral attack by private citizens. Beyer v. Templeton, 147 Tex. 94, 212 S.W.2d 134 (1948), citing Kuhn v. City of Yoakum, 6 S.W.2d 91 (Tex.Com.App., 1928).

Texas courts have held municipal annexation ordinances to be void and not merely voidable on several different grounds. In Deacon v. City of Euless, supra, it was stated that if the territories sought to be annexed by the ordinances exceed the ten per cent area limitation fixed by Sec. 7B of Art. 970a, the ordinances are void by the very terms of the statute.

A suit which challenges an annexation because 1) the ordinance attempts to annex territory within the corporate limits of another municipal corporation and 2) it

attempts to annex property not adjacent to its city limits, is a suit that alleges facts which, if proved, would demonstrate that the ordinance is void ab initio and not merely voidable for irregularities, and such suit may be brought in the nature of a collateral attack rather than through quo warranto proceedings. City of Irving v. Callaway, 363 S.W.2d 832 (Dallas, Tex.Civ. App., 1962, writ ref., n. r. e.), citing many cases.

■ A city annexation ordinance containing a description under which it is impossible to close the boundary of the territory to be annexed is void. State ex rel. Rose v. City of La Porte, 386 S.W.2d 782 (Tex.Sup.1965).

We will look to the Notice Ordinance to determine whether it was void. The notice required by Sec. 6 of Article 970a is a prerequisite to annexation. It states:

"Before any city may institute annexation proceedings, the governing body of such city shall provide an opportunity for all interested persons to be heard at a public hearing to be held not more than twenty (20) days nor less than ten (10) days prior to institution of such proceedings. Notice of such hearing shall be published in a newspaper having general circulation in the city and in the territory proposed to be annexed. The notice shall be published at least once in such newspaper not more than twenty (20) days nor less than ten (10) days prior to the hearing. Additional notice by certified mail should be given to railroad companies then serving the city and on the city's tax roll where the right-of-way thereof is included in the territory to be annexed. Annexation of territory by a city shall be brought to completion within ninety (90) days of the date on which the governing body of such city institutes annexation proceedings or be null and void. Provided, however, any period of time during which a city is restrained or enjoined from annexing any such territory by a court of competent jurisdiction shall not be computed in such 90-day limitation period."

Eastex has shown that there were defects in the Notice Ordinance, which was passed on August 18, 1965, was duly published on August 21 of that year and gave notice of a public hearing to be held on September 1. Its description of territories to be annexed engulfs and thus includes both the City of Humble and what has been stipulated to have been its extraterritorial jurisdiction of one-half mile beyond Humble's corporate limits unless such areas are carved out of the territory described in the Notice Ordinance by its savings clause. Such clause, which appears after the boundary description, states: "SAVE and except the City of Humble, Texas as shown on official maps and ordinances of official record at the Harris County Courthouse." The uncontroverted evidence showed that the City of Humble contained a number of areas duly annexed from time to time, only about half of which were shown on official maps and ordinances of official record at the Harris County Courthouse.

Thus we note that in effect notice was given that the areas proposed to be annexed by Houston included several areas within Humble's corporate limits not so recorded in the Courthouse plus Humble's extraterritorial jurisdiction as provided by Article 970a. It is also noted that all of Humble's one-half mile extraterritorial jurisdiction was overlapped by the five mile extraterritorial jurisdiction awarded to Houston by Article 970a. Sec. 3B of that article states that the extraterritorial jurisdiction of a city shall not be reduced without the written consent of the governing body of such city except in cases of judicial apportionment of overlapping extraterritorial jurisdictions. There had been no judicial apportionment and written consent was not obtained from the governing body of Humble until the two cities agreed in writing to divide their overlapping extraterritorial jurisdiction in November, 1967, If the defect under examination had been

in the Annexation Ordinances instead of the Notice Ordinance, such Annexation Ordinances would have been void when enacted, and the later release of some of the overlapped areas by Humble would not operate to revive such ordinances. State ex rel. City of Everman v. City of Fort Worth, 363 S.W.2d 500 (Fort Worth, Tex. Civ.App., 1962, writ ref., n. r. e.). And if the notice was held to be void because it included overlapped areas, the same principle would seem to apply and the 1967 agreement would not breathe life into the 1965 annexation.

As to defects in the description of the boundaries of the area to be annexed, the Notice Ordinance contained several:

1. The first call states: *"Beginning* at a point, the intersection of the northerly line of the William Whitlock Survey A–85 and a Sinclair (2″–12″), U. Gas pipeline northeasterly and northwesterly along said Sinclair pipeline to the center line of the easterly branch of Luce Bayou;"

The uncontroverted evidence shows that two easterly branches of Luce Bayou intersect the Sinclair pipeline.

■ 2. The next call is: "Thence northwesterly along the center line of said easterly branch of Luce Bayou, across Luce Bayou, to the southwesterly line of Huffman-Crosby Road;" The only witness who testified he tried to follow this call on the ground did so when the water level was low and apparently at a time well over a year after passage of the Notice Ordinance. He said that if you try to apply this call to either of the two branches of Luce Bayou you intersect no roads, but that if you apply it to the northernmost one you come within 100 to 150 feet west of a corner of a road between Cleveland and Huffman, so we will consider only the northernmost branch. Both Huffman and Crosby are south of this area and are on the east side of Luce Bayou, but there is evidence in the record that the Cleveland-Huffman road north and west of Luce Bayou is sometimes known locally and on

some maps as the Huffman-Crosby Road. Houston has in evidence on this point an October, 1964 U.S. Dept. of Agriculture aerial photograph which purports to show that a projection of the center line of the northernmost branch of Luce Bayou would touch a corner of the road between Cleveland and Huffman near the bayou, but it is difficult to determine the direction in which such line should be projected because the scale is small and the shore line is indistinct and irregular. Houston's description was prepared in an office and was not checked on the ground. Testimony as to the intention of the department which prepared the description with respect to which branch was meant and which road its center line was meant to intersect is not the basis for determining whether proper notice has been given. State ex rel. Rose v. City of La Porte, 386 S.W.2d 782 (Tex.Sup.1965), points out that the enactment of annexation ordinances is legislative in character and if the description cannot be literally applied on account of inaccuracy, a reasonable construction is to be made *by examining the whole of the ordinance provisions* in order to carry into effect the intent of the body which enacted it. We are persuaded that the corner of the road near the northwest bank of Luce Bayou is the point intended. It is the only possible point of intersection of the projection of the branch's center line and the "Huffman-Crosby Road".

The exhibits show that if the line which follows the meanders of the center line of the northernmost one of the easterly branches of Luce Bayou is projected across the bayou, such road is found to be the only road near the bayou in that vicinity. This road reaches a point near the bank of the bayou opposite the place where the easterly branch in question enters Luce Bayou, then makes an abrupt turn at an angle of approximately 110°. As it approaches this vicinity the road proceeds in a southwesterly direction, then takes a northwesterly course. Houston's exhibits reflect that a line which purports to be the center line of said branch, if projected

across Luce Bayou, would meet the road at this turn or corner.

At best, a call for the projection of a line which follows the meanders of the center of a branch of a bayou until the branch reaches the bayou is a line whose direction is subject to change as the banks of the branch change from time to time where they meet the bayou, and it is not a line whose direction can be easily ascertained. However, by applying the rule we have quoted from State ex rel. Rose v. City of La Porte, supra, which requires us to examine the whole of the ordinance provisions in order to carry into effect the intent of the body which enacted them, we conclude that the reasonable construction of such provisions is that the turn we have mentioned was the point on the road where the projection of the center line was intended to touch. In reaching this conclusion we note that the exhibits show that such turn is the nearest place to the bayou where the southwesterly right-of-way line of the road can be encountered by the projected center line and that as such lines proceed northwesterly they do not draw nearer to each other, so that if they were not intended to meet at the turn it would be necessary to supply a missing call in order to bring them together.

3. The next calls are: "Thence northwesterly along the southwesterly line of Huffman-Crosby Road to a point on the Sinclair 2″–8″ pipeline;

"Thence northwesterly following the Sinclair 2″–8″ pipeline to a point on the Harris County and Montgomery County boundary line;

"Thence southwesterly along the Harris County-Montgomery County boundary line to a point on the center line of White Oak Bayou."

The uncontroverted proof shows that such pipeline is no longer there; that Sinclair still has in place the pipeline described in the Notice Ordinance's first call but that as it approaches Luce Bayou from the south and east it turns almost due east and that for several years Sinclair has had in this area no pipeline that extends north or west of Luce Bayou. Houston says its call refers to a Sinclair pipeline that used to cross the road connecting Huffman and Cleveland; the evidence shows that it ran northwest from Luce Bayou and extended to the Montgomery County line, but it was taken up in 1959, and the releases of the easements for such pipeline were recorded in March, 1960. There is nothing on the ground to indicate whether the still visible outline of a lane out through this heavily wooded area marks a boundary line or some kind of an easement line and nothing to identify it with Sinclair.

■ The description does not furnish within itself or by reference to some other existing writing the means by which the land to be annexed can be identified but it is pointed out in Young v. Gharis, 170 S. W. 796 (Dallas, Tex.Civ.App.1914, no writ), and in other cases cited in 5 Lange Texas Land Titles, § 763, that when an ambiguity is not patent on the face of a deed but arises from extraneous facts, parol evidence is admissible to explain it. Such an explanation was given by a Sinclair engineer who testified that aerial photographs in evidence, which still show a lane once cut through this area, are indications of an old Sinclair pipeline that was north and west of Luce Bayou. He said it extended to the Montgomery County line and that he could find the pipeline's former location on the ground.

The distance from Luce Bayou to the Montgomery County line is more than five miles.

Eastex contends that the call for the Sinclair pipeline is completely ineffective because such man-made monument was not in existence at the time it was described. We disagree with this contention and hold that the call for the Sinclair pipeline was made certain by parol evidence. Its efficacy in giving notice to interested persons would have been increased appreci-

ably if it had been described as the Sinclair pipeline which formerly was at the specified location and if its location had been more accurately described.

4. There are other problems. Calls 45–47 state:

(45) "THENCE northeasterly along the line of the Goodrich to Houston 16″ pipeline to a point on the easterly line of the Indian Shores Subdivision;

(46) "THENCE northerly along the easterly line of the Indian Shores Subdivision to a point on the northerly line of the William Whitlock Survey A–85;

(47) "THENCE westerly along the northerly line of the William Whitlock Survey A–85 to the POINT OF BEGINNING."

The points to which they refer cannot be located, because the pipeline in question does not touch or cross the easterly line of the Indian Shores Subdivision. It does cross the north and south lines, but the construction suggested by Houston would first require a determination that Houston intended to include the subdivision (because all of it is west of its easterly line and the line being described is the easterly line of the area to be annexed) and then a reconstruction of the description to call for an intersection with the south line instead of the east line of the subdivision, then to add a call following that line east to its easterly line, and then add a call going along the easterly line, north, and then add a call going along the northerly line west to the next easterly line, and then add a call going along the easterly line to the north line of the Whitlock Survey, and then change the call from west to east along that line to the place of beginning. The conclusion as to Houston's intent seems reasonable, but the changes in the calls are extensive. The distance between call 44 and the point of beginning is about 2.4 miles, and the distance between the pipeline and the easterly line of Indian Shores is 2600 feet.

There are other defects in the description. We will not discuss them because we do not consider them to be serious defects.

■ After careful reconsideration of the difficult task of applying the facts of this case to the legal principles announced in the decided cases, we have now concluded that the defects in the notice are not such as to make the 1965 annexation void by reason of "an entire want of power on the part of the city to annex" but that such defects may be "a mere irregular exercise thereof." As such, they do not furnish the basis for a collateral attack. Lefler v. City of Dallas, 177 S.W.2d 231 (Dallas, Tex. Civ.App.1943, no writ), citing Kuhn v. City of Yoakum, supra.

Still looking at the description contained in the *notice*, we conclude that even though Houston erroneously included in its description of the territory proposed to be annexed some territory within another municipality plus its extraterritorial jurisdiction, this notice does not alone constitute an "attempt to annex such territory" so as to make void the Annexation Ordinances later enacted. Further that the other defects we have noticed in the descriptions contained in the Notice Ordinance do not make the annexation void.

Article 970a does not specifically require that the notice shall contain a description of the territories proposed to be annexed, nor does it require that the notice ordinance be in the same form as the annexation ordinance; it merely requires that notice be given of a public hearing at which interested persons are to have an opportunity to be heard.

We next examine the description contained in the Annexation Ordinances of the territories purported to be annexed to determine whether Houston was attempting to annex part of Humble or its extraterritorial jurisdiction.

Annexation Ordinances 65–1556 AR and 65–1556 BR contain identical descriptions. They were passed on third reading by the

Houston City Council and approved by the Mayor on November 16, 1965. The evidence shows that their description also engulfs the City of Humble and its extraterritorial jurisdiction unless such areas are exempted by the savings clause contained in the Annexation Ordinances. Such clause is quite different from that found in the Notice Ordinance; the savings clause in the Annexation Ordinances states:

"Should any section or part of this ordinance be held unconstitutional, illegal or invalid, or the application thereof ineffective or inapplicable as to any territory, such unconstitutionality, illegality, invalidity or ineffectiveness of such section or part shall in no wise affect, impair or invalidate the remaining portion or portions thereof, but as to such remaining portion or portions, the same shall be and remain in full force and effect; and should this ordinance for any reason be ineffective as to any part of the area hereby annexed to the City of Houston, such ineffectiveness of this ordinance as to any such part or parts of any such area shall not affect the effectiveness of this ordinance as to all of the remainder of such area, and the City Council hereby declares it to be its purpose to annex to the City of Houston every part of the area described in Section 1 of this ordinance, regardless of whether any other part of such described area is hereby effectively annexed to the City. Provided, further, that if there is included within the general description of territory set out in Section 1 of this Ordinance to be hereby annexed to the City of Houston any lands or area which are presently part of and included within the limits of the City of Houston, or which are presently part of and included within the limits of any other City, Town or Village, or which are not within the City of Houston's jurisdiction to annex, the same is hereby excluded and excepted from the territory to be hereby annexed as fully as if such excluded and excepted area were expressly described herein."

Appellees concede that this savings clause would exclude from the effect of the Annexation Ordinances the area within Humble's corporate limits at that time, but contend that it does not exclude Humble's one-half mile extraterritorial jurisdiction. We disagree with this assertion; the savings clause's exclusion of areas "which are not within the City of Houston's jurisdiction to annex" would serve to carve out of the Annexation Ordinances the City of Humble's overlapped one-half mile extraterritorial jurisdiction (the overlapped areas had not been divided between the two cities as required by Sec. 3B of Art. 970a). Such overlapped area was easily identifiable. A savings clause may be given effect if "the intentions of the annexing authority [are] made entirely clear as to the extent of the territory sought to be added to the City." State ex rel. Winn v. City of San Antonio, 259 S.W.2d 248 (San Antonio, Tex.Civ.App.1953, writ ref., n. r. e.).

Eastex also asserts that the Annexation Ordinances' savings clause would not operate to exclude Humble's corporate limits as extended by Humble Ordinance No. 122. This contention is based on appellees' position that Art. 974d–12, V.A.C. S., validated Humble Ordinance 122 because Humble was a "city or town heretofore incorporated or attempted to be incorporated under the general laws of Texas," but we find no proof in the record as to whether Humble was thus incorporated. The record does reflect that Houston's Annexation Ordinances were passed on first reading nearly three months before Humble's Ordinance 122 was first passed, and under the holding of City of Houston v. State ex rel. City of West University Place, 142 Tex. 190, 176 S.W.2d 928 (1943), Houston thus asserted authority and acquired jurisdiction over those areas which were outside Humble's extraterritorial jurisdiction but were covered both by Houston Annexation Ordinances and by Humble Ordinance No. 122. See also State ex rel. American Mfg. Co. of Tex. v. City of Fort

Worth, 314 S.W.2d 335 (Fort Worth, Tex. Civ.App.1958, no writ). For these reasons we hold that it has not been shown that the Annexation Ordinances constitute an attempt by Houston to annex areas under the jurisdiction of Humble.

We next examine the Annexation Ordinances for defects in the description of the boundaries of the area to be annexed:

1. Although call No. 44 in the Annexation Ordinances is similar to call No. 1 of the Notice Ordinance, it does not give rise to the problem found in call No. 1 which we have discussed. Call No. 44 starts at the intersection of the north line of Water Control and Improvement District No. 87 and the Sinclair pipeline, and states: "THENCE northeasterly and northwesterly along the center line of the Sinclair and Service Pipe Line Company easement to the center line of an easterly branch of Luce Bayou located in the Gilbert Brooks Survey, A–6; * * *" There is no difficulty in determining which of the easterly branches of Luce Bayou was designated in the Annexation Ordinance because the pipeline crosses only one of them north of Water Control and Improvement District #87.

2. Houston's next problem is that of encountering the Huffman-Crosby Road. Calls 45 and 46 are:

"THENCE northwesterly along the meanders of the center line of said easterly branch of Luce Bayou, crossing Luce Bayou, to the southwesterly right-of-way line of Huffman-Crosby Road;

"THENCE northwesterly along the southwesterly right-of-way line of Huffman-Crosby Road, a distance of 1000 feet to a point for corner; * * *"

Although the road in question is again called the "Huffman-Crosby Road" in the Annexation Ordinances, it can be identified by examining Calls 46–50, which we will next notice, because their references to the Gilbert Brooks and James H. Isbell Surveys show that the road between Huff-

man and Cleveland was the one Houston intended to name. In our discussion of this problem as it concerned the Notice Ordinance, we concluded that the description of the road was adequate, and we reach the same result as to the call for it in the Annexation Ordinances, where it can be more readily located by reversing the calls.

3. There is an obvious conflict within Call 47. Calls 46 and 47 read:

"THENCE northwesterly along the southwesterly right-of-way line of Huffman-Crosby Road, a distance of 1000 feet to a point for corner;

"THENCE west along an imaginary line parallel and at right angles to the north line of the Gilbert Brooks Survey, A–6, a distance of 1500 feet, to a point for corner; * * *"

The line cannot run "parallel and at right angles," but Call 48 shows that we can resolve the problem by discarding the impossible call "and at right angles." Turner v. Sawyer, 271 S.W.2d 119 (Eastland, Tex. Civ.App.1954, writ ref., n. r. e.); 19 Tex. Jur.2d 470–2, Deeds, § 154.

4. Calls 48, 49 and 50 are as follows:

"THENCE north along an imaginary line perpendicular and at right angles to the north line of the Gilbert Brooks Survey, A–6, a distance of 1700 feet more or less, to the center line of the Sinclair Pipe Line easement, located in the James H. Isbell Survey, A–474;

"THENCE generally northwesterly following the said Sinclair pipeline easement to a point on the Harris County and Montgomery County boundary line;

"THENCE southwesterly along the Harris County-Montgomery County boundary line to a point on the center line of White Oak Bayou, located in the M. H. Short Survey, A–535, and the Harrison McClain Survey, A–529; * * *"

These calls are somewhat similar to Calls 3, 4 and 5 of the Notice Ordinance, which we have already noticed, but there are important differences. For one, the Notice Ordinance called for a Sinclair 2″–8″ pipeline while the Annexation Ordinances called for a Sinclair Pipe Line easement. (As noted, the pipeline was taken up in 1959 and the easements were released in March, 1960.) For another, Call No. 3 of the Notice Ordinance provides for a line going northwesterly along the southwesterly line of Huffman-Crosby Road to a point on the Sinclair pipeline, while the Annexation Ordinance calls make reference to the Gilbert Brooks Survey, A–6, and to the James H. Isbell Survey, A–474, both of which are located northwest of Luce Bayou, so such references eliminate the possibility that the Sinclair pipeline in the calls was the one still in place which stays east of Luce Bayou.

■ There are other defects in the description given in the Annexation Ordinances, but by applying the rule we have quoted from the opinion of State ex rel. Rose v. City of La Porte, supra, we conclude that such descriptions were adequate. "For obvious reasons, the descriptions of municipal boundaries are not construed with the same strictness as are those outlining the boundaries in grants or contracts." Lower Nueces River Water Supply District v. Cartwright, 274 S.W.2d 199 (San Antonio, Tex.Civ.App.1954, writ ref., n. r. e.), quoting from 37 Am.Jur. 633, Municipal Corporations, § 16.

■ We conclude that the territory which was the subject matter of the 1965 annexation by Houston was within the authority and jurisdiction of Houston to annex so it was at least de facto a part of Houston. Thus it gave Houston color of law to annex territory contiguous to such 1965 territory, and the 1967 ordinance is not subject to collateral attack. " 'The general rule that the valid existence of a de facto municipal corporation authorized to exist under the laws can only be ques-tioned in quo warranto proceedings brought by the authority of the state has been recognized and enforced by many decisions of our Supreme Court and Courts of Civil Appeals.' " Hunt v. Atkinson, 12 S.W.2d 142 (Tex.Com.App.1929).

■ One of the grounds for appellees' petition was that there are discrepancies between the territory purportedly included within the Notice Ordinance and that within the Annexation Ordinances; there are such discrepancies, and we have noticed some of them. The charters of some Texas municipalities have required that a notice ordinance be published in the form in which the annexation ordinance may finally be passed; see City of River Oaks v. Lake Worth Village, 231 S.W.2d 768 (Fort Worth, Tex.Civ.App.1950, writ ref., n. r. e.), but it has not been asserted that Houston's charter contains such a requirement and we think it significant that the Municipal Annexation Act does not contain one either. We conclude that the discrepancies between the territory Houston described in the Notice Ordinance and the territory it described in the Annexation Ordinances are not of such nature as to render the 1965 annexation void.

We do not have before us and do not pass upon the questions of whether 1) the defects in the Notice Ordinance which we have noticed or 2) the discrepancies between the descriptions in the 1965 ordinances, were such as to make the 1965 annexation vulnerable to a direct attack.

■ Houston's seventeenth point of error asserted that appellees (plaintiffs) having failed to offer any evidence of any such defects in Houston's 1965 Notice Ordinance and Annexation Ordinances as would warrant a judicial interference with the legislative function of the City Council of the City of Houston in enacting its 1967 Ordinance 67–262, the trial court erred in enjoining the Council from enacting the latter ordinance or any part thereof. We sustain this point because we conclude that the evidence establishes as a matter of law

that the 1965 ordinances were not subject to collateral attack. As appellant has observed, this suit constitutes a collateral collateral attack in that the 1967 annexation was collaterally attacked by a collateral attack on the 1965 ordinances.

We also sustain appellant's other "no evidence" points, its thirteenth and eighteenth ones, for the same reason we sustained its seventeenth point.

 Appellant's fifteenth point, a "great weight" point is overruled; it is not applicable when an instructed verdict was ordered.

Houston's third and sixth points of error are considered to have been waived because they were not argued in its brief. Thigpen v. Locke, 363 S.W.2d 247 (Tex.Sup.1962).

Appellant's eighth, ninth, tenth and eleventh points assert that the trial court erred in overruling certain of its special exceptions. We overrule these points; proof of the matters alleged in the paragraphs complained about was not offered in the trial and the points in question were abandoned by Eastex, so they could not have served as a basis for the granting of the injunction. Further, these points were not argued in Houston's brief and are waived.

We overrule appellant's twelfth point, which complains of the exclusion of the testimony of its witness, Mr. White. Houston did not have on file pleadings of estoppel or laches to support the introduction of the offered testimony which concerned improvements and commitments Houston had made in the territory covered by the 1965 Ordinance, and neither of these nor any other basis for admitting such evidence is advanced in appellant's brief.

Appellant's sixteenth point complains of the exclusion of a map showing the Huffman-Crosby road. The error, if any, is not material, because we have considered the road in question to have been shown by Houston to be locally known by that name in the area.

In view of our having sustained appellant's seventeenth point, we deem it unnecessary for us to rule on those points we have not mentioned.

The permanent injunction is ordered dissolved, the cause is reversed and judgment is rendered that appellees take nothing.